UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CONCRETE FLOTATION SYSTEMS, INC.,
d/b/a BELLINGHAM MARINE,

                           Plaintiff,         **REPORT AND**
     v.                                    **RECOMMENDATION**

TADCO CONSTRUCTION CORPORATION and     07-CV-319 (ARR) (VVP)
UNITED STATES FIRE INSURANCE COMPANY,

                           Defendants.
-----------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

       In this breach-of-contract action, Judge Ross granted summary judgment in favor of the

plaintiff Concrete Flotation Systems, Inc., d/b/a Bellingham Marine ("Bellingham") for

$150,000.00, and determined that Bellingham was entitled to reasonable attorneys' fees, costs, and

pre-judgment interest.   Judge Ross has now referred the matter to me for a Report and

Recommendation as to the appropriate amount to award for attorneys' fees, costs, and pre-judgment

interest.   Bellingham requests $282,285.00 in fees, $23,556.98 in costs, and $60,731.50 in pre-

judgment interest.   The defendant, Tadco Construction Corporation ("TADCO"), strenuously

disputes these amounts, and argues that Bellingham should only be entitled to $50,000 in fees and

costs, and a lesser, unspecified amount in pre-judgment interest.   The undersigned respectfully

recommends that the plaintiff be awarded attorneys' fees, costs, and pre-judgment interest as set out

below.

I.      **Discussion**[1]

    A.      **The Presumptively Reasonable Fee**

Establishing the amount of "reasonable" attorneys' fees has been the subject of extended discussion in the Second Circuit in recent years.  *See generally Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009); *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009); *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), *superseding* 493 F.3d 110 (2d Cir. 2007).  Reasonable attorneys' fees used to be calculated by what was known as the "lodestar" method, which entailed determining the "number of hours reasonably expended on the litigation [and] multipl[ying that figure] by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Whitney v. Jet Blue Airways Corp.*, No. 07-CV-1397, 2009 WL 4929274, at *2 (E.D.N.Y. Dec.21, 2009) (providing background and history).  Courts would then adjust the lodestar figure by a multiplicative figure, if need be, to reflect the specific considerations of a particular case.  *See Arbor Hill*, 522 F.2d at 186, 190.  The reasonableness of hourly rates was guided by the market rate "[p]revailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation," *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Hensley*, 461 U.S. at 433, while the relevant community was generally the "district in which the court sits," *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

More recently, however, the Second Circuit signaled a departure from the "lodestar" language, in favor of a modified approach that focuses on calculating a "presumptively reasonable

---

[1] As both counsel and the court (having written twice on summary judgment) have extensive familiarity with this case, the court does not include a separate factual background.

-2-

fee." *See Arbor Hill*, 522 F.3d at 190; *see also Simmons*, 575 F.3d at 172; *Barfield*, 537 F.3d at 151. Notwithstanding the abandonment of the "lodestar" approach, the presumptively reasonable fee is still determined by reference to the number of hours reasonably expended on a matter and the reasonable fee to be charged for those hours. *See generally Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009). Under this approach, the court considers a multitude of case-specific factors[2] in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplies that rate by the number of hours reasonably spent on the case. *Arbor Hill*, 522 F.3d at 184, 190. The product is known as the presumptively reasonable fee. *See id.* Thus, district courts must now "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. (emphasis in original). This determination is undertaken consistent with the principle that a "reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190.

The Second Circuit recently clarified its approach on attorneys' fees and the presumptively reasonable fee. *See McDaniel v. Schenectady*, No. 07–5580–CV, 2010 WL 520899, at *8-11 (2d

---

[2] These factors include, but are not limited to, the "complexity and difficulty of the case, the available expertise and capacity of the client's other counsel, the resources required to prosecute the case effectively, the timing demands of the case, [and] whether an attorney might have an interest in achieving the ends of the litigation or might initiate the representation himself," – *Arbor Hill*, 522 F.2d at 184, 187-90 – as well as the twelve factors the Fifth Circuit employed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* factors include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to properly perform the relevant services; (4) the preclusion of other employment attendant to counsel's acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. *Johnson*, 488 F.2d at 717-19.

Cir. Feb. 16, 2010). The Circuit reiterated that the presumptively reasonable fee represents an approximation of "what a competitive market would bear." *Id.* at *9. Whereas the traditional lodestar approach had multiplied the hourly rate by the number of hours worked and *then* used the *Johnson* factors to reflect case-specific considerations, the *Arbor Hill* approach essentially front-loads the *Johnson* factors. *See McDaniel*, 2010 WL 520899, at *9 (citing *Arbor Hill* and assessing case-specific considerations at the "outset, [and] factoring them into [the court's] determination of a reasonable hourly rate for the attorneys' work."); *see also Saunders v. City of New York*, No. 07-CV-830, 2009 WL 4729948, at *6 (S.D.N.Y. Dec. 9, 2009) (contrasting the lodestar and *Arbor Hill* methods and describing how the latter considers *Johnson* factors "earlier in the fee calculation process"). The court in *McDaniel* observed that

> [f]rom a mathematical perspective, of course, it makes little difference whether a court, following *Arbor Hill*, considers case-specific factors to estimate a reasonable rate for an attorney's services, which is then multiplied by the number of hours worked, or whether the court takes the traditional approach and considers those same factors in calculating a multiplier to the lodestar. The benefit of *Arbor Hill's* [sic] methodology is that by considering case-specific factors at the outset, the district court's focus on mimicking a market is maintained.

2010 WL 520899, at *10 (citing *Arbor Hill*, 522 F.3d at 192); *see also Saunders*, 2009 WL 4729948, at *6.

## 1.      Reasonable Hourly Rates

Bellingham is represented in this case by Davis Wright Tremaine ("DWT"), a large firm based in Seattle, Washington. DWT has submitted an application requesting hourly rates that range from $65 for secretarial work,[3] to a maximum of $550 for the work of a partner, Balin, in DWT's

---

[3] DWT requests $1,077.94, reflecting 15.40 hours of secretarial work performed by an "Anderson" in Seattle. The court recommends excluding this amount from its fee award, as secretarial work is typically not included in a fee application, but is instead part of a firm's overhead. *See Kahlil v. Original Old Homestead Restaurant, Inc.*, 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) (citing *Bridges v.*

New York office. *See* Declaration of Randall Steichen in Support of Plaintiff's Motion for Interest, Attorney Fees and Costs, dated July 17, 2009 ("Steichen Decl."), at 6. The great majority of the work herein was performed by three attorneys: Steichen, a partner in Seattle, Theiss, also a partner in Seattle, and Robinson, an associate in New York. Steichen's hourly rates range from $475 to $525, while Theiss' range from $380 to $420. Robinson's hourly rate ranges from $365 to $415, while the hourly rate for the four other associates who worked on this case ranges from $200 to $385. Counsel has provided adequate detail with respect to the experience levels of the primary attorneys who worked on this matter. *See Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1134, 1158 (2d Cir. 1994). Steichen and Theiss have extensive experience and skill in this field, justifying a not insignificant hourly rate.

Although he has handled this litigation more than competently, the attorney who has billed the greatest number of hours by far, Robinson, appears on the basis of the plaintiffs' submissions to specialize in intellectual property matters, art law, and copyright and trademark law. *See* Steichen Decl., Exhibit B. It is difficult to justify associate rates that approach and exceed $400 per hour for an attorney who does not specialize in the subject matter of this routine litigation. Even if Robinson had had that specialization in commercial litigation, contractual disputes, or construction areas generally, the court is not familiar with any case in this district where a court has approved attorneys' fees for an associate billed out at more than $400 per hour. Likewise, Balin, whose fees alone in this matter approach $20,000 and who is billed out at maximum rates of $550 per hour, appears to specialize in media law, defamation, and other First Amendment areas rather than in the subject matter of this litigation. *See* Steichen Decl., at 6 and Exhibit B. Using the *Arbor Hill*

---

*Eastman Kodak* Co., No. 91-CV-7985, 2006 WL 47304, at *7 (S.D.N.Y. Feb. 6, 1996)).

standard, the court is skeptical that a reasonable paying client would be willing to pay associate rates exceeding $400 per hour and partner rates exceeding $500 to attorneys who do not practice extensively on the subject matter of the case.  Rather, it does not stretch belief to assert that Bellingham could have obtained counsel and as effective a result by retaining lawyers whose rates are far lower.  The same is true for the paralegals; a reasonable paying client is unlikely to pay in excess of $200 per hour for their services.  *See Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.*, No. 07-CV-656, 2007 WL 4324019, at *6 (E.D.N.Y. Dec. 7, 2007) (providing the prevailing hourly rate for paralegal services as between $70 and $80); *Saunders*, 2009 WL 4729948 , at *8 (awarding $75 hourly rate for paralegal work); *Starkey v. Somers Central School Dist.*, No. 02-CV-2455, 2008 WL 5378123, at *8 (S.D.N.Y. Dec. 23, 2008) (awarding $100 per hour as reasonable rate for paralegals).  There are *attorneys* who charge less.

As previously mentioned, the court establishes a reasonable hourly rate by looking to the prevailing market rates for comparable services in the district in which the case is filed.  *See Blum*, 465 U.S. at 896 n.11; *Polk*, 722 F.2d at 25.  Bellingham recognizes that the "relevant community" for purposes of hourly rates is "that in which the case is pending," but makes little distinction between rates in the Eastern and Southern Districts of New York, instead relying mostly on rates approved in the Southern District.  Indeed, its rates appear to better approximate those in the Southern District.  *See, e.g.*, *Alfano v. Cigna Life Insurance Co.*, No. 07-CV-9661, 2009 WL 890626, at *3-4 (S.D.N.Y. Apr. 2, 2009) (setting out Southern District market rates).  Bellingham cites an Eastern District case that appears to sanction consideration of both Eastern District and Southern District rates.  *See Larsen v. JBC Legal Group*, 588 F. Supp. 2d 360, 363 (E.D.N.Y. 2008).  That case, however, was decided before *Simmons*, which reinforced a sharp distinction in rates for

attorneys' fees between these two districts. *See Simmons*, 575 F.3d at 172 (referring to prevailing Eastern District rates as "substantially lower" than those in the Southern District); *see also Luciano v. Olsten*, 109 F.3d 111, 115-17 (2d Cir. 1997) (distinguishing rates between the Southern and Eastern Districts). While the two districts share a geographical proximity and a "uniquely permeable" border – *Luca v. County of Nassau*, No. 04-CV-4898, 2008 WL 2435569, at *9 (E.D.N.Y. June 16, 2008), *affirmed in part and vacated in part,* 375 Fed. Appx. 637 (2d Cir. 2009) – the circuit refused to approve higher Southern District rates for a case litigated in the Eastern District. *Simmons*, 575 F.3d at 174-76. In such circumstances, the court held, "when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Id.* at 175. The court continued, "In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* at 175. A litigant must justify the retention of counsel at higher out-of-district rates by showing that, otherwise, counsel at forum rates would likely have produced a substantially inferior result. *Id.* at 176. *Simmons* is not without its critics, notably in this district, but it does remain the law of this circuit. *See Luca v. County of Nassau*, No. 04-CV-4898, 2010 WL 307027, at *1-2 (E.D.N.Y. Jan. 25, 2010) (Block, J.); *Gutman v. Klein*, No. 03-CV-1570, 2009 WL 3296072, at *2 n.1 (E.D.N.Y. Oct. 13, 2009) (Cogan, J.).

The plaintiff's failure to distinguish between Eastern District and Southern District rates is somewhat understandable, inasmuch as *Simmons* was decided after Bellingham filed its initial brief on attorneys' fees. Counsel is not located in the Eastern District of New York, but the inquiry is whether its billing rates reflect the market rates in this district – as opposed to market rates in the

Southern District or elsewhere.  Bellingham has not demonstrated that counsel at lower Eastern District rates was unlikely to have litigated this case as effectively, or would have produced a substantially inferior result.  On that basis, a reduction in fees is warranted to bring them into line with the prevailing market rates in this district.  *Whitney* invaluably collected recent cases on reasonable hourly rates for partners and associates in the Eastern District of New York.  *See Whitney*, 2009 WL 4929274, at *7 (listing cases and approving an hourly rate of $350 for experienced attorney seeking a $450 hourly rate).  As the court observed, the "rates applied in this district have ranged widely depending on the nature of the firm, the experience of the lawyer and the type of case."  *Whitney*, 2009 WL 4929274, at *7.  As *Whitney* was decided quite recently and sets forth a good catalogue on rates, it is worth surveying the cases cited for the general proposition that partner rates between $300 and $400 are in line with those prevailing in this district.  *See Gutman*, 2009 WL 3296072, at *2-3 (approving hourly rates between $300 and $400 for partners, $200 and $300 for senior associates, and $100 and $200 for junior associates); *Melnick v. Press*, No. 06-CV-6686, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009)  (noting market rates of between $200 and $375 for partners and between $100 and $295 for associates); *Moran v. Sasso*, No. 05-CV-4716, 2009 WL 1940785, at *4 (E.D.N.Y. July 2, 2009) (noting rates of $200 to $350 for partners and $200 to $250 for senior associates); *Duverger v. C & C Duplicators, Inc.*, No. 08-CV-0721, 2009 WL 18132229, at *2 (E.D.N.Y. June 25, 2009) (listing market rates as between $200 and $350 for partners, and $200 and $250 for senior associates); *Motorola, Inc. v. Abeckaser*, No. 07-CV-3963, 2009 WL 2568529, at *4-5 (E.D.N.Y. Aug. 5, 2009); *Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.*, No. 07-CV-656, 2007 WL 4324019, at *6 (E.D.N.Y. Dec. 7, 2007) (providing market rates between $200 and $375 for partners, $200 to $250 for senior

associates, $100 to $150 for junior associates, and $70 to $80 for paralegals); *Baruch v. Healthcare Receivable Mgmt, Inc.*, No. 05-CV-5393, 2007 WL 3232090, at *5 (E.D.N.Y.  Oct. 30, 2007) (noting hourly rates of $200 to $375 for partners); *Expeditors Int'l of Wash., Inc. v. Rubie's Costume Co., Inc.*, No. 03-CV-3333, 2007 WL 430096, at *2 (E.D.N.Y. Feb. 2, 2007) (noting partner rates between $200 and $375 per hour, and awarding "on the high side" [$340-$370] for commercial litigator with 25 years experience).

With these considerations in mind, $350 seems an appropriate hourly rate for the court to adopt for the partners who worked on this case, given their varied backgrounds and experience, and what a reasonable paying client in this case would be willing to pay for these services.  For the associates collectively, a reasonable hourly rate is $250.  For the paralegals, the figure is $100 per hour.  Nothing about this case or the parties involved warrants a departure to any appreciable extent from the hourly rates that the court has set forth.  With regard to the case-specific considerations in *Arbor Hill*, there is little about this case that is complex or difficult.  While it may have required a minimal understanding of the construction industry, it was at heart a contractual dispute about a specific payment provision.  The court does not wish to second-guess Bellingham's decision to retain DWT, with whom it had a long-standing business relationship, but local counsel in the Eastern District could have easily handled this case as well, without any prior relationship.   As discovery was rather limited and there were few depositions, a straightforward case of this nature did not necessarily require the resources available at a large firm like DWT.  As discussed below, this was not a case that should have required an inordinate amount of time, or one that raised especially novel or difficult questions.

## 2.    Number of Hours Worked

Even after *Arbor Hill* modified the lodestar approach, determining reasonable attorneys' fees still requires a review of reasonably detailed contemporaneous time records, as contemplated by *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). DWT has submitted adequate documentation, including extensive billing records showing for each attorney billed the date on which the work was performed, the nature of the work, and the hours spent on the matter. *See id.*; Steichen Decl., Exhibit C. The court has examined those billing records, and finds the number of hours spent – approximately 700 – to be excessive. Courts are given broad discretion to evaluate the reasonableness of the number of hours expended. *See Anderson v. Sotheby's, Inc.*, 04-CV-8180, 2006 WL 2637535, at *1 (S.D.N.Y. Sept. 11, 2006); *see also Hensley*, 461 U.S. at 434; *Luciano*, 109 F.3d at 116; *Duke v. County of Nassau*, No. 97-CV-1495, 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003). In considering what is reasonable, courts "should exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 2009); *see also Hensley*, 461 U.S. at 434 (excluding hours that are "excessive, redundant, or otherwise unnecessary"). A court has broad discretion to "trim the fat" in an application for attorneys' fees, and to eliminate excessive or duplicative hours. *See, e.g.*, *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d. Cir. 1988); *Carey*, 711 F.2d 1136, 1146-47 (2d Cir. 1983). The exercise of that discretion suggests applying heavy scrutiny to Bellingham's request. If the instant application is not larded with fat, it is at the least, overly marbled.[4]

As an initial matter, this case was seriously overstaffed. Bellingham requests recovery for hours billed by 14 different legal personnel in this action. This includes 3 different partners (two

---

[4] The court is in no way suggesting that counsel has engaged in any wrongdoing or has acted improperly in any fashion. It simply is not entitled to as much in fees and costs as it asserts.

in Seattle and one in New York), 5 different associates (three in Seattle and two in New York), and six different secretaries and paralegals (four in Seattle and two in New York).  The court acknowledges that the raw numbers may overstate the overstaffing to some extent.  For example, two of the paralegals billed a total of .57 hours on this case.  *See* Steichen Decl. at 6.  Similarly, of the five associates, the lion's share (approximately 86%) of the hours was worked by Robinson.  *See* Steichen Decl., at 6.  Likewise, while Steichen and Theiss together billed in excess of 300 hours (even accounting for the proposed reductions to exclude time spent on an issue relating solely to the claim against TADCO's co-defendant), Steichen essentially replaced Theiss as a billing partner, and they did not bill concurrently.[5]  *See* Supplemental Declaration of Randall Steichen in Support of Plaintiff's Motion for Interest, Attorneys Fees and Costs ("Supp. Decl."), dated August 19, 2009, at 5-6.  And the third partner, Balin, seems to have billed at the outset of the litigation.  *See* Steichen Decl., Exhibit C.

Still, the court does not see how the complexity of such a case required eight different attorneys; this could have been handled by one partner and one associate.  Staffing this litigation with a high number of attorneys ensured that (1) unnecessary time was spent so that each attorney acquainted himself or herself with the facts and the issues; and (2) unnecessary time was spent in communication with the other attorneys on the matter.  For instance, in January 2007, both Balin

---

[5]  DWT has proposed reducing the fees sought by $15,644 to account for work performed on the bond timeliness issue with respect to TADCO's co-defendant, United States Fire Insurance Company ("U.S. Fire").  Its request for $282,285 in attorneys' fees thus accounts for the $15,000 reduction.  The court has examined the billing entries for the work on the bond timeliness issue with respect to U.S. Fire, and it appears that DWT has proposed recovery of half of the hours spent by Theiss in April and June of 2008 on matters that include, but are not limited to, the U.S. Fire claim.  In other words, DWT has identified time entries that reflect approximately 46 hours worked by Theiss on this mainly in April and June of 2008, but seeks compensation for only 23 (because presumably the other 23 hours were spent litigating against TADCO).  Bellingham also withdrew its request for another 20.5 hours spent by partners and associates on that issue primarily in January and September 2007.

and Theiss billed for tasks that should not have required more than one partner, especially since an associate, Duran, was also assisting, as was Majer, a paralegal. *See* Steichen Decl., Exhibit C. Similarly, many of the entries reference communications with the other attorneys at DWT that should not have been necessary given the simple nature of this case. *See id.* Some minimal consultation is necessary; here, given the substantial overstaffing, there was more consultation than necessary. The court also notes that a good deal more time was billed for the partners than for the associates. Especially in a simple case, one expects that the associates would bill more hours than the partners in order to keep down costs. But regardless of whether two attorneys or eight worked on the matter and regardless of the proportions between partner hours and associate hours, 700 hours is clearly an excessive amount of time to obtain summary judgment in such a straightforward case.

Another example of excessive hours is the amount of time Theiss billed in April and June 2008 on Bellingham's summary judgment motion. *See* Steichen Decl., Exhibit C. It is out of proportion to the brevity of the plaintiffs' moving papers accompanying the motions for summary judgment. Of course, the number of pages of legal analysis is not necessarily indicative of the number of hours necessary to making and briefing the motion. But that this case is relatively simple and offers few complex issues should also be taken into account when combing over the work performed and the number of hours necessary to achieve summary judgment. On that point, the amount of time spent researching and drafting Bellingham's summary judgment motions appears to exceed what that relatively straightforward task should have required. The court also notes the large number of hours spent researching New York law. *See* Steichen Decl., Exhibit C. While some research was undoubtedly necessary, employing an experienced New York attorney familiar with the salient provisions and concepts in New York law would have saved a significant number of

hours and a good deal of money.[6]  TADCO should not bear the costs of Bellingham's decision to retain counsel that needed to spend a significant number of hours getting up to speed on New York law for a case litigated in New York applying New York law.  Arguably, local counsel could have incurred fewer hours on legal research, saving fees and time.

Likewise, travel time – which was not insubstantial coming from Seattle – should not be reimbursable either as attorneys' fees billed, or as costs for airfare, meals, and lodging.  *Cf. Whitney*, 2009 WL 4922974, at *9 n.8 (awarding travel *expenses*, not attorney travel time fees for out-of-district counsel, but questioning compensability of travel expenses); *see also Hahnemann v. University Hosp. v. All Shore, Inc.*, 514 F.3d 300, 312 (3d Cir. 2008).  For example, Theiss billed approximately 16 hours of travel time to come to New York for the DeMartino deposition in February 2008 and then to fly back to Seattle the day after.  *See* Steichen Decl., Exhibit C.  At his rate of roughly $400 per hour, the travel time alone amounted to over $6,000 in fees, not counting the $1,300 in costs for airfare, meals, and lodging.  *See id.*  There is no reason these expenses needed be incurred instead of using counsel in New York – especially since DWT has an office in New York from which one partner and two associates worked on this matter and managed to bill over $120,000.  *See Motorola*, 2009 WL 2568529, at *7 (denying travel costs for Chicago counsel to come to New York since plaintiff had local counsel and citing cases).  For the same reasons, neither should Steichen's travel time in February 2009 to and from New York for a settlement conference be reimbursable.  *See* Steichen Decl., Exhibit C.  If Bellingham wanted to retain Seattle counsel, with whom it had a longstanding relationship, and pay substantial travel-related costs for them to

---

[6] Because they pertained to U.S. Fire, some of these hours appear to have been withdrawn or excised in Bellingham's reply papers.  *See* Supp. Decl., at 5-6.

come to New York, such is Bellingham's prerogative. However, the court questions whether a reasonable paying client would be willing to do so, and TADCO should not be responsible for Bellingham's having made such an election. Bellingham cites the district court decision in *Simmons* to justify the recovery of counsel's extensive travel fees. The fees in *Simmons*, however, were between the Southern and Eastern Districts of New York – a distance that involves only a few subway stops and a matter of minutes. *See Simmons v. New York City*, No. 02-CV-1575, 2008 WL 630060, at *3-5 (E.D.N.Y. Mar. 5, 2008), *vacated and remanded*, 575 F.3d 170. In this case, the travel – across three time zones and the continental divide – involved flying from Seattle to New York.

Counsel for TADCO has identified several specific entries that reflect excessive hours or poor billing judgment. These include billing (1) .70 of an hour in February 2007 for electronically filing an affidavit of service; (2) .30 of an hour in February 2007 for an entry too vague to merit compensation; (3) .80 of an hour for exchanging messages with Bellingham on the defendant's request on filing an answer; and (4) 1.3 hours for reading, drafting, and forwarding an e-mail. *See* Memorandum of Law in Opposition to Motion for Attorney's Fees and Interest, dated August 11, 2009, at 9. The court agrees that these entries are questionable, but in any extensive fee application containing hundreds of entries for work performed over a period of several years, there are likely to be a few rotten apples – that is, entries that are easily disputable and appear unreasonable. The relevant inquiry, it seems to the court, is whether those rotten apples are emblematic of the entire application, or whether they are mere aberrations or outliers in an otherwise proper application. *See Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (allowing district courts considering voluminous billing records to avoid "set[ting] forth item-by-item findings concerning what may be

-14-

countless objections to individual billing items."). "In similar cases with voluminous fee applications, courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application." *Carey*, 711 F.2d at 1146-47; *see also Lunday*, 42 F.3d at 134.  In this vein, courts are expected to take into account their own familiarity and experience both "generally" and with the particular case at hand, rather than attaining "exactitude" with respect to each individual billing entry.  *See Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (citing cases); *Amato v. City of Saratoga Springs*, 991 F. Supp. 62, 65 (N.D.N.Y. 1998) (internal citations omitted).

Here, DWT requests over $300,000 (including costs), which represents over 700 hours worked on this case.  Counsel has performed quite competently, but in this court's experience, obtaining summary judgment in as straightforward a breach-of-contract case as this one should not require so many billable hours.  TADCO's counsel probably overstates the simplicity of the case, but it is not complex, did not offer major issues with respect to discovery, did not involve many depositions, and did not require extensive motion practice.[7]  In isolation, it is difficult to quarrel with many of the particular entries in DWT's invoices, or to say that on any given day, the attorney should not have engaged in a particular task, should not have billed for it, or should have spent far less time doing it.  But on balance, given the court's experience with similar cases and familiarity with this one, many more hours were spent on this case than were reasonably necessary.

To some extent the situation here highlights a difficulty in applying marketplace considerations, as *Arbor Hill* envisions, in determining fee awards.  Here, the attorneys' fees and

_____

[7]Although the case required two summary judgment motions to reach a final resolution, a review of the papers on those motions discloses that neither involved novel issues or was otherwise complex.

costs sought by the plaintiff well exceed (in fact more than double) the recovery the plaintiff was

seeking – $151,870 – most of which the plaintiff has in fact now obtained.  Presumably, a reasonable

paying client would not have incurred attorneys' fees and costs twice the potential recovery – but

for the possibility of a fee award, not bringing the claim at all here would have made more economic

sense.  It is difficult to attempt to predict conduct in a marketplace where the client, particularly a

well-heeled one, also knows that if they prevail on their claims they will obtain recovery of their fees

in addition to damages.  Of course, *Arbor Hill* does not stand for the proposition that attorneys' fees

may not exceed damages, or even that fees and damages must be proportional to each other, but it

is nevertheless difficult to reconcile *Arbor Hill*'s guiding language for calculating a presumptively

reasonable fee with the not uncommon outcome in which the award of fees and costs eclipses the

damages award.[8]

Taking into account the above considerations, and on the basis of the nature of the case, the

overstaffing, the inclusion of an excessive number of hours worked, and the above-market fee rates,

it is appropriate to trim the attorneys' fees award to $146,784.50.  That figure was calculated by

reducing the compensable hours for each category of professionals – partner, associates, and

paralegals – by 25%, and then multiplying the reduced number of hours by the hourly rate applicable

to each category as discussed above.  For partners, after subtracting the hours billed by Theiss and

---

[8] The cases in which courts have rejected a "proportionality" principle on attorneys' fees and damages, appear to have involved claims arising from the deprivation of a constitutional right.  *See, e.g.*, *County of Riverside v. Rivera*, 477 U.S. 561, 576-78 (1986); *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005); *Quarantino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999).  In those cases, courts did not wish to limit fee awards on the basis of constitutional injuries that might have had a "low monetary value," but that have had greater societal ramifications.  *See, e.g.*, *Kassim*, 415 F.3d at 252; *Rivera*, 477 U.S. at 575-78; *Starkey*, 2008 WL 5378123, at *6.  The central concerns animating the reasoning of those cases are largely absent in this commercial litigation; accordingly, it may be questionable whether that principle extends to a contractual dispute between sophisticated commercial entities.

Balin on the U.S. Fire bond issue (30.65), the court reduced the total partner hours billed (349.33) by 25%, which came to 262.  Multiplying that number by a reasonable hourly rate of $350 yields a total of $91,700 for the partners.  For associates, after subtracting the hours billed by Duran, Robinson, and Hossain on the U.S. Fire bond issue (13), the court reduced the total associate hours billed (266.08) by 25%, yielding 199.56.  That figure, multiplied by a reasonable hourly rate of $250, comes to $49,890 in associate fees.  After excluding the secretarial time (15.4 hours), the court reduced the number of total paralegal hours billed (69.26) by 25%, to yield 51.95 compensable paralegal hours.  At a reasonable hourly rate of $100, fees for paralegal time come to $5,194.50. The partner fees ($91,700), associate fees ($49,890), and the paralegal fees ($5,194.50) thus total $146,784.50. That figure is based on a reasonable hourly rate reflecting both case-specific considerations and what a reasonable paying client would be willing to pay (bringing DWT's hourly fees in line with those prevailing in this district for similar services), and a reduction of the number of hours worked to a more reasonable, though still high, amount of time to spend on a case of this nature.  An appropriate award of attorneys' fees is not a science, of course, and is not susceptible to exacting precision.  *See Kirsch*, 148 F.3d at 173; *Carey*, 711 F.2d at 1146; *Amato*, 991 F. Supp. at 65 (internal citations omitted).  The amount seems to the court to be a reasonable fee in view of the issues raised, the work performed, and the court's wide discretion in awarding attorneys' fees. *See Barfield*, 537 F.3d at 151.  While the recommended award is significantly less than that sought by counsel, it is significantly more than the amount urged by TADCO, and still compensates Bellingham's counsel handsomely for their legal services in relation to this case. If anything, $146,000 is an overly generous calculation of what it should take in this district to obtain summary

judgment in a comparable matter.  *See McDaniel*, 2010 WL 520899, at *10 (citing *Arbor Hill*, 522 F.3d at 192).

### B.    Costs

DWT also requests an impressive award of $ 23,556.98 as costs, which consist of ECF access charges, online legal research, mailings, travel-related expenses (which, as discussed above, should *not* be compensable), photocopying charges, service of process fees, filing fees, and other expenses. DWT has submitted the invoices sent to Bellingham that reflect the costs sought.  *See* Steichen Decl., Exhibit C.  For the reasons expressed above, DWT's sizeable travel expenses should not be included as costs.  Therefore, the court has examined the invoices, and has determined that $6,555.37 in travel-related expenses should not be included.  That represents the costs of airfare, lodging, meals, ground transportation, and travel agent fees for three separate trips to New York – one by Theiss and two by Steichen.  Additionally, the court has subtracted $22.65 that had been billed in June 2008 as a "working meal", and the $25.00 fee billed in March 2009 for DWT's appearance in this action *pro hac vice*. When all of these non-compensable costs are subtracted, the total is $16,953.96.  Of that figure, $3,491.63 was billed for online legal research through Westlaw and Lexis.   While there is authority for including online legal research in the amount of attorneys' fees instead of costs  *– see United States ex rel Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 173 (2d Cir. 1996) (citing *Haroco, Inc. v. American Nat'l Bank & Trust Co. Of Chicago,*  38 F.3d 1429, 1440-41 (7th Cir. 1994)) – this distinction is not terribly material, and the court will consider these charges as costs.  The court recognizes that the use of online legal databases like Westlaw easily becomes quite expensive.  Nevertheless, for the reasons expressed above, $3,500 in research fees is too much for a straightforward case like this.  Therefore, the court

-18-

proposes a 25% reduction in research charges in line with the 25% reduction applied to attorney hours. The court proposes an additional reduction of 5% because at least some of the research appears to pertain to the U.S. Fire issue, and should not be compensable as against TADCO. Thus, the online legal research costs that the court recommends awarding amount to $2,444.14. The rest of the costs appear reasonable and compensable, although the overall number of photocopies does appear somewhat high. *See Motorola*, 2009 WL 2568529, at *7 (citing *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, at *8 (E.D.N.Y. June 13, 2005)). Therefore, the court recommends a costs award of $15,906.47.

### C.      Interest

Bellingham also requests an award of pre-judgment interest pursuant to New York's Civil Practice Law and Rules. The C.P.L.R. states that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract . . ." N.Y. C.P.L.R. § 5001. Under the C.P.L.R., "[i]nterest [on the underlying judgment award] shall be at the rate of nine per centum per annum, except where otherwise provided by statute." N.Y. C.P.L.R. § 5004. Case law makes clear that "[i]n an action to recover damages for breach of contract, pre-judgment interest is awarded pursuant to N.Y. C.P.L.R. § 5001." *MRC Indus., Inc. v. Global Therapy Systems, LLC*, No. 06-CV-33, 2009 WL 2461106, at *4 (E.D.N.Y. Aug. 7, 2009) (citation omitted); *see also New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003); *Carco Group, Inc. v. Machonachy,* 644 F. Supp. 2d 218, 246 (E.D.N.Y. 2009). Here, the parties did not agree on an applicable rate of interest in the event of a judgment, so it is appropriate to use the rate provided in the C.P.L.R. TADCO, objects and argues that an award of interest at 9% would constitute a

-19-

"windfall" for the plaintiffs.[9]  *See Benesowitz v. Metropolitan Life Ins. Co.*, No. 04-CV-805, 2009 WL 2196785, at *12 (E.D.N.Y. Jul. 9, 2009) (Platt, J.).  *Benesowitz*, however, was an ERISA disability case that lacked the explicit statutory grant of pre-judgment interest, and instead committed that determination to the discretion of the court.  *See id.*  Moreover, the length of the interest period in that case exceeded the period in the instant case in which interest was accruing. There is no mathematical formula or cut-off for distinguishing a "windfall" from what is merely a merited payment under the prevailing statutes.  And the contract cases that raise the windfall issue appear to do so not in the context of the actual interest *rate*, but in discussing the date interest began to accrue, an issue that TADCO has not raised.  *See 155 Henry Owners Corp. v. Lovlyn Realty Co.*, 231 A.D. 2d 559, 560-61 (2d Dep't 1996); *Kaiser v. Fishman*, 187 A.D. 2d 623, 627-28 (2d Dep't 1992); *Gelco Builders & Burjay Const. Corp. v. Simpson Factors Corp.*, 301 N.Y.S. 2d 728, 731 (N.Y. Sup. Ct. 1969); *cf. Algie v. RCA Global Communications, Inc.*, 891 F. Supp. 875, 899 (S.D.N.Y. 1994) (applying federal interest rate in ERISA benefits determination). With all of these considerations in mind, pre-judgment interest should be awarded under the C.P.L.R. at the rate of 9% per annum, which as demonstrated in Bellingham's moving papers, amounts to $60,731.50.  As that amount still constitutes less than half of the damages award, it should not be considered a windfall, but as merited compensation for the lengthy delay in obtaining what TADCO owed Bellingham.

---

[9] TADCO suggests that interest should instead be determined under 28 U.S.C. § 1961.  That provision allows for interest on "any money judgment in a civil case recovered in a district court," and directs that it "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  The cases cited in the court's discussion, however, stand for the proposition that interest in a breach of contract action should be calculated according to the salient C.P.L.R. provisions.

-20-

## CONCLUSION

For the reasons stated above, the court respectfully recommends that the plaintiff be awarded $146,784.50 in attorneys' fees, $15,906.47 in costs, and $60,731.50 in pre-judgment interest.

*          *          *          *          *          *          *

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992).


*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge


Dated: Brooklyn, New York
          March 15, 2010